## THE STATE v. JAMES HARGETT.

If A attemps to pursue B into a house, and the latter shuts the door so that A cannot enter, and A attempts to break the door open with an axe, and B opens the door, when he is collared by A, and a fight ensues, and B is killed by a deadly weapon, it is murder.

A Judge is not required to charge the jury upon a hypothetical case, and if the evidence does not justify the instructions asked for, it is improper to give them.

It is sufficient if a Judge gives substantially the instructions asked for.

Indictment for the murder of one March Webb, tried before *Logan, J.*, at Spring Term, 1871, of GASTON Superior Court.

The evidence of the homicide was as follows: Amanda Williams testified that on the 2d December, 1870, the prisoner came to her house, intoxicated, and was cursing and offering to fight. That he caught hold of the deceased several times. Witness tried to get the prisoner to leave. Prisoner followed witness to the spring and threatened to strike her—did strike her slightly once or twice. When she got near the house prisoner picked up an axe, when witness and the deceased ran

into the house, closing and fastening the door. Prisoner struck the door several times with the axe. Prisoner then pulled a puncheon from between the logs of the building and pitched the axe into the room through the opening made by the removal of the puncheon. When this was done, the deceased took up the axe and walked to the door, saying at the time " d—n him, let me out." When the deceased got to the door, and was trying to open it, witness took the axe from him and threw it under the bed. The door was then opened and the deceased stepped out, when the prisoner caught him by the collar with one hand, holding the puncheon in the other. Deceased then placed both hands against the breast of the prisoner, when a slight struggle ensued. Prisoner took the puncheon in both hands and struck the deceased a severe, blow on the head knocking him down and striking him twice after he fell, saying " I have killed him." Blood flowed from the mouth and ears of the deceased.

On cross-examination witness admitted that her feelings toward the prisoner were unkind.

Mary Scott, a witness for the State, testified that she was present when the homicide was committed. Her testimony corroborated the statement of the witness Amanda, as to what occurred outside of the house.

On cross-examination she testified that she saw the deceased, through the hole made by the removal of the puncheon, when he took up the axe and walked to the door, and the witness Amanda took it from him and threw it under the bed. Witness admitted that her feelings were unkind toward the prisoner.

Dr. J. D. McLean testified that he was called to see the deceased ; that the injuries received by him were mortal, and caused his death. It was admitted that the puncheon was a deadly weapon.

The Court, after adverting to general principles of law applicable to different degrees of homicide, was asked by the pris-

oner's counsel to instruct the jury that if they find that the prisoner's fears were reasonably excited by the approach of the deceased, and he believed that his life was in danger, or that some great bodily harm would be inflicted upon him, the killing was only manslaughter.

His Honor declined to charge specifically as requested, but stated he had charged upon that point. The prisoner's counsel asked the Court to instruct the jury that if they find the temper and disposition of the witnesses towards the prisoner to be of such a character as to prejudice him in their eyes, or to influence their testimony to his injury, they should take that fact into consideration in making up their verdict.

The Court declined to charge specifically as requested, but stated that the jury could look at the conduct of the witnesses.

Verdict, guilty of murder. Rule, &c. Judgment and appeal.

*Attorney General* and *Batchelor*, for the State.
No counsel for the prisoner.

BOYDEN, J. The only questions raised in this case, are upon the reply of his Honor, to the instructions asked for by prisoner's counsel.

The instructions asked, were as follows :

" That if the jury find that the prisoner's fears were reasonably excited by the approach of the deceased with the axe, and believed that his life was in danger, or that some great bodily harm would be inflicted upon him, the killing was only manslaughter."

His Honor, declined to charge specifically, as requested, but stated that he had charged upon that point.

There was no evidence in the case to warrant any such instruction, and all the testimony shows that the prisoner had been the aggressor, from the beginning.

It was the prisoner who received the axe and pursued de-

ceased with it; and when the deceased, with one of the witnesses, ran into the house and closed the door, fastened it and refused admittance to the prisoner, he struck the door several blows with the axe; but, being unable to force the door, he pulled out a puncheon from between the logs of the house, thus making an opening by the removal of this puncheon into the room where the deceased was, and through which the prisoner threw the axe. Upon the axe being thrown into the room, the deceased picked it up and advanced towards the door which was still closed and fastened, and cursed the prisoner; but the axe was immediately taken from him and thrown under the bed; and the deceased was unarmed when the prisoner approached him, and seized him with one hand by the collar, holding the puncheon in the other, when, after a slight struggle, the prisoner taking the puncheon in both hands, struck the deceased a severe blow, knocking him down, and giving him two blows after he had fallen.

The prisoner's counsel also asked his Honor " further to instruct the jury, that if they find the temper and disposition of the witnesses towards the prisoner to be of such a character as to prejudice him in their eyes, or to influence their testimony to his injury, they should take the fact into consideration in making up their verdict."

The Court declined to charge specifically as requested, but stated " that the jury could look at the conduct of the witnesses."

We understand his Honor as substantially complying with the request of the prisoner's counsel; and his Honor by saying the jury could look at the conduct of the witnesses, meant thereby, and was so understood by the jury, that they, in making up their verdict, would consider the deportment of the witnesses on the stand, and the admissions of the two female witnesses that their feelings towards the prisoner were unkind, and give such weight to their testimony as they might think it entitled to.

We think it would have been better, that his Honor should have given the instruction specifically as requested, when in law, the party was entitled to it. But, it is sufficient, that his Honor, in other language, gave the charge substantially as requested, and in a way not to be misunderstood by the jury.

There is no error.

PER CURIAM.                                     Judgment affirmed.